**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Danny L. Miller-Kidd,

             Plaintiff,

vs.

Doug Ducey, et al.,

             Defendants.

No. CV-17-08019-PCT-SPL

**ORDER**

On February 13, 2017, pro se Plaintiff Danny L. Miller-Kidd filed an amended complaint against Elizabeth Moss, an Assistant Arizona Attorney General, Tracy Stevens, a case manager for the Arizona Department of Child Safety, and Arizona Governor Doug Ducey.[1] (Doc. 5.) Stevens and Moss have moved to dismiss the complaint pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure. (Doc. 12.) After considering the parties' filings,[2] the Court finds that it lacks jurisdiction under *Rooker-Feldman* and will dismiss this action.

Miller alleges that on September 14, 2013, minor child K.M. and her siblings were removed by the State from their mother and were placed into foster care. (Doc. 5 ¶ 10.) A

---

[1]    Ducey was dismissed from this action on April 11, 2017. (Doc. 8.)

[2]    Several of Miller's submissions in this case have been filed and/or signed by a non-lawyer proxy, inmate JD Merrick, who the parties have advised is Miller's brother. (*See e.g.*, Docs. 33 & 34.) While the federal rules generally do not permit non-lawyers to represent parties in federal court, as a matter of discretion and judicial economy, the Court has considered the filings. Miller is forewarned however that further filings of this kind will be summarily stricken by the Court.

publication hearing was held on December 8, 2014 in the Mohave County Superior Court, at which time Judge Richard Weiss entered an order of default as to all putative fathers of K.M., thereby terminating their parental rights. (Doc. 5 ¶¶ 17, 26.) Miller alleges that in the weeks that followed, he was alerted by a relative of K.M. that he was possibly her biological father. (Doc. 5 ¶ 18.) Miller contacted Stevens and underwent DNA testing, the results of which confirmed on May 5, 2015 that he was K.M.'s father. (Doc. 5 ¶¶ 18 - 22.) Unbeknownst to Miller, however, K.M. and her siblings had been adopted the previous month. (Doc. 5 ¶ 24.) On August 24, 2015, Miller, through counsel, moved to intervene in the state court proceedings and to set aside the adoption of K.M. (Doc. 5 ¶ 26.) The state court denied the motion on October 15, 2015, reasoning: "There is no pending case to intervene in, as this case was dismissed as to K.M. on or about June 8, 2015. This matter is not the adoption file and the father appears to have established paternity by genetic testing prior to the termination order. The father, although known to Department of Child Services, never participated in any court proceeding. He was defaulted as a John Doe father at a Publication Hearing held December 8, 2014." (Doc. 5 ¶ 26.) Miller states that he pursued other avenues for relief in state court such as a "Writ of Habeas Corpus, Special Action, etc.," but "[i]n every instance the court refused to hear" him. (Doc. 5 ¶ 27.)

In his amended complaint, Miller brings three claims for relief under 42 U.S.C. § 1983 and asks for nominal, compensatory, and punitive damages against each defendant and judgment of the Court: (1) declaring that Stevens and Moss violated his "parental and constitutional rights and protections under the United States Constitution"; (2) declaring that Arizona Revised Statute § "8-106.01 et seq. that the court relied [on] to terminate [Miller's] parental rights violated his First, Fourth, Fifth, and or Fourteenth Amendment rights under the United States Constitution"; (3) invalidating the adoption of K.M.; restoring Miller's "right to due process"; reinstating Miller's parental rights to K.M.; and remanding K.M. into the custody of Miller. (Doc. 5 ¶¶ 35-37.)

The *Rooker-Feldman* doctrine instructs that federal courts lack jurisdiction to hear

2

a direct appeal of a state court judgment[3] or any "'de facto equivalent' of such an appeal." *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012) (quoting *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003)). A federal cause of action functions as a "forbidden de facto appeal under *Rooker-Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court." *Cooper*, 704 F.3d at 777-78; *Noel,* 341 F.3d at 1163. *See also Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 284 (2005) (the doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."). "Once a federal plaintiff seeks to bring a forbidden de facto appeal,… that federal plaintiff may not seek to litigate an issue that is 'inextricably intertwined' with the state court judicial decision from which the forbidden de facto appeal is brought." *Noel*, 341 F.3d at 1158.

Here, each of Miller's claims hinge on the allegation that the state court's termination of his parental rights deprived him of his constitutional rights, and he asks that this Court invalidate the state court's order of adoption on that basis. In other words, Miller challenges adverse state court orders and seeks relief from them in federal court, which is precisely the type of de facto appeal that *Rooker-Feldman* bars. *See Cooper*, 704 F.3d at 777-78.

Miller's claims against Steven and Moss arising from their acts or omissions in connection with the state court proceedings are inextricably intertwined with the de facto appeal of the state court's rulings and final judgment. *See Noel*, 341 F.3d at 1158; *Bianchi v. Rylaarsdam*, 334 F.3d 895, 901 (9th Cir. 2003). Miller does not argue that either defendant caused him some independent injury. *Cf. Noel,* 341 F.3d at 1163. Rather, Miller complains of harm caused by the state court's judgment. (*See* Doc. 34 at 7 ("If not for their actions, the family court would not have defaulted Plaintiff or Plaintiff would

---

[3] The doctrine applies to both final judgments and "interlocutory state court decisions." *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001).

have been able to intervene for just cause before K.M.'s adoption."); Doc. 5 ¶ 34 ("Moss and Stevens individually and or jointly caused the Plaintiff to lose any and all rights to his biological daughter, to include but not limited to custody and all rights guaranteed him and his biological daughter").) Therefore, the claims against Steven and Moss for their actions are barred under *Rooker-Feldman*.

Miller's alternative claim challenging the constitutionality of Arizona's putative fathers registry provision, cited as "A.R.S. [§] 8-106.01 et seq.," also is inextricably intertwined with his de facto appeal. Although the introduction in his pleading attempts to allude otherwise (*see* Doc. 5 ¶ 2), Miller does not bring a general constitutional attack on the validity of the state statute that is independent of the state court's rulings and judgment. *Cf. Skinner v. Switzer*, 562 U.S. 521, 534 (2011). Rather, Miller challenges the constitutionality of the application of the statute by the state court in his case; indeed, his claim specifically requests that the Court declare the statute on which the state "court relied to terminate [his] parental rights" to be unconstitutional. (Doc. 5 ¶ 36; *see also e.g.,* Doc. 5 ¶ 30 ("The statute allows judges in the State of Arizona to strip away the Plaintiff's rights as a father").) It follows that the claim is inextricably intertwined because the relief requested would effectively reverse the state court judgment or void its ruling. *See Cooper*, 704 F.3d at 778-81; *Bianchi*, 334 F.3d at 898. (Doc. 33 at 9 ("Plaintiff's complaint asserts that if not for the unconstitutional actions of the defendants – and the unconstitutionality of the statute, ARS 8-106.01 et seq. – the court conducting adoption proceedings could not by law permit the adoption of Plaintiff's daughter.").) This claim is therefore also barred under *Rooker-Feldman*.

Lastly, Miller's argument that his claims are not barred under *Rooker-Feldman* because he is not a "losing party" is unavailing. (Doc. 33 at 9.) By his own allegations, Miller was indisputably a party to the action as his parental rights were defaulted, and thus, he was directly bound by the state court judgment whether or not he was allowed to intervene in the case after it became final.

Accepting Miller's allegations as true and drawing all reasonable inferences in his

favor, the Court finds that they are insufficient as a legal matter to invoke the Court's jurisdiction. *See Snyder & Associates Acquisitions LLC v. United States*, 859 F.3d 1152, 1157 (9th Cir. 2017); *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014); *Kougasian v. TMSL, Inc.,* 359 F.3d 1136, 1139 (9th Cir. 2004). The Court finds that the jurisdictional deficiency in the amended complaint cannot be cured by the addition of known or discoverable facts that are consistent with the present allegations. It therefore concludes that further development of the record is not warranted and will dismiss the amended complaint without leave to amend. *See U.S. v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011); *Ventress v. Japan Airlines*, 603 F.3d 676, 680 (9th Cir. 2010); *Lira v. Herrera*, 427 F.3d 1164, 1176 (9th Cir. 2005); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Accordingly,

**IT IS ORDERED**:

1. That the Motion to Strike (Doc. 37) is **denied**;

2. That the Motions to Dismiss (Docs. 27, 29) are **granted**;

3. That the amended complaint and this case are **dismissed**; and

4. That the Clerk of Court shall **terminate** this action and enter judgment accordingly.

Dated this 23rd day of March, 2018.

Honorable Steven P. Logan
United States District Judge